# ORLEANS COUNTY,

## AUGUST TERM, 1869.

[CONTINUED FROM PAGE 494.]

---

### CARLOS J. BARNES *v.* TOWN OF RUTLAND.

*Soldier's Bounty. Pardon. President's Proclamation. Vote.*

The plaintiff on the 5th day of January, 1864, re-enlisted to the credit of the defendant town and served until the 18th day of May, 1864, when he deserted. The 7th day of March, 1865, the defendants voted to pay a bounty of $500 to re-enlisted veterans, "provided that no part of such sum of $500 shall be paid to any soldier who has deserted or may desert, or to his representatives." On the 28th day of March, 1865, the plaintiff returned to the service under the President's proclamation of March 11th, 1865, pardoning all deserters on condition of their returning to service within sixty days, and served until the close of the war, when he was honorably discharged. *Held,* that the plaintiff was not entitled to a bounty under said vote.

ASSUMPSIT to recover town bounty. Tried by the court, upon a case stated, at the June term, 1869, STEELE, J., presiding.

Judgment *pro forma* that the plaintiff recover the sum of $495 damages and his costs; to which the defendants excepted. The following is the agreed statement of facts:

"Carlos J. Barnes, of Holland, county of Orleans, being in the military service of the United States as a private in Co. B, of the 8th regiment of Vermont volunteers, re-enlisted on the 5th day of January, 1864, for the term of three years, unless sooner discharged, to the credit of the town of Rutland in this state, and counted upon the quota of that town and served until, May 18, 1864, he deserted from said military service and was entered and returned upon the rolls of his company and regiment as a deserter on and from said 18th day of May, 1864, until the 28th day of March, 1865. On the 11th day of March, 1865, the President of the United States issued and published a proclamation, as hereinafter set forth.

On the said 28th day of March, 1865, said Barnes returned to said service, under said proclamation, and served in his com-

pany and regiment in said military service faithfully until the 28th day of June, 1865, at which time he received an honorable discharge from said service by reason of special order No. 163, extract 2, Army of the Potomac, which in substance was that the war had closed and the government had no further need of volunteers. At the annual town meeting of the town of Rutland aforesaid, duly warned for that purpose, held on the first Tuesday of March, 1865, the following vote was passed:

"'Voted to pay the sum of $500 to each and every veteran soldier who has re-enlisted for and been credited to the town of Rutland and has not been paid any town bounty; provided that no part of such sum of $500 shall be paid to any soldier who has deserted or may desert, or to his representatives. Provided that said sum shall be paid in instalments of $50 each on the 1st days of December and July in each year, till all is paid. Payment to commence on the 1st day of July, 1865.'

"Said Carlos J. Barnes claims to be legally entitled to a bounty by virtue and under the provisions of said vote. The said town denies its obligation to pay said Barnes any bounty on the ground that said Barnes was a deserter from the said service as aforesaid, and for this reason has never paid him any bounty on account of his re-enlistment and credit to said town of Rutland, except the first instalment of fifty dollars, which was paid before it was known by said town that said Barnes was a deserter as aforesaid. It is agreed that if said Barnes is entitled to recover, he shall recover the sum of four hundred and fifty dollars and interest from the time each instalment became due to date of judgment."

The following is the President's proclamation:

"*Whereas,* The 21st section of the act of Congress approved on the 3d inst., entitled 'An act to amend the several acts heretofore passed to provide for the enrolling and calling out national forces and for other purposes,' requires that in addition to the other lawful penalties of the crime of desertion from the military or naval service, all persons who have deserted the military or naval service of the United States who shall not return to said service or report themselves to a provost marshal within sixty days after the proclamation hereinafter mentioned, shall be deemed and taken to have voluntarily relinquished and forfeited their rights of citizenship and their right to become citizens, and such deserters shall be forever incapable of holding any office of trust or profit under the United States, or of exercising any rights of citizens thereof; and all persons who shall hereafter desert the

military or naval service, and all persons who being duly enrolled, shall depart the jurisdiction of the district in which he is enrolled or go beyond the limits of the United States with the intent to avoid any draft into the military or naval service duly ordered, shall be liable to the penalties of the section: and the President is hereby authorized and required forthwith on the passage of this act to issue his proclamation setting forth the provisions of this section, in which proclamation the President is requested to notify all deserters returning within sixty days as aforesaid, that they shall be pardoned on condition of returning to their regiments and companies, or to such other organization as they may be assigned to, until they shall have served for a period of time equal to their original term of enlistment. Now be it known that I, Abraham Lincoln, President of the United States, do issue this my proclamation as required by said act, ordering and requiring all deserters to return to their proper posts; and I do hereby notify them that all deserters who shall within sixty days from the date of this proclamation, viz.: on or before the 10th day of May, 1865, return to service or report themselves to a provost marshal, shall be pardoned on condition that they return to their regiments and companies, or such other organizations as they may be assigned to, and serve the remainder of their original term of enlistment and in addition thereto a period equal to the time lost by desertion."

*Dunton & Veazey* and *E. J. Hartshorn*, for the defendants.

A soldier can have no valid claim against the town, to the credit of which he enlisted for a town bounty, except by vote of such town. And towns have the right, in voting bounties, to make such exceptions and provisoes as they shall think best. *Haven* v. *Ludlow*, 41 Vt., 418; *Rand* v. *City of Worcester*, 98 Mass., 126. The statute of this state (session laws of 1862, No. 38,) give the town a wider discretion even than that of Massachusetts in voting bounties. Under this statute, "any town," etc., "may grant and vote such sums of money as they may deem best." Barnes would not be entitled to the bounty, even if no provision had been made in the vote to exclude deserters. By the provisions of the act of 1864, the legislature declares "that no action shall be sustained by a soldier for such bounty or pay when said soldier has deserted the service." Acts of 1864, p. 26, § 3. *Harvey* v. *Peacham*, 42.

Vt., 287. The pardoning of the soldier by the President could have no effect upon the question of town bounty. It is entirely a matter between the *government* and *soldier*. The constitution of the United States gives to the President, in general terms, " the power to grant reprieves and pardons for offences ·against the United States." The effect of a pardon by the President is to restore the criminal to his antecedent rights, as between himself and the United States, under certain limitations. 10 Johns., 232; 4 Wash. C. C. R., 64. The act of Congress of March 3, 1863, § 26, provided that the President should issue his proclamation that all soldiers absent without leave, who should return to their commands within a specified time, should be restored without punishment, except forfeiture of their pay and allowances during their absences. The act of March 3, 1865, compels them to serve out the time they were away, after their time would have expired had they not deserted, instead of a forfeiture of pay, as in the act of 1863. By this act of 1865, which provided for the issuing of the proclamation under which Barnes returned, the soldier would receive no pay for the time he was absent, but would receive pay for the time of actual service after his return. By desertion a soldier forfeits all pay and allowances due at the time of desertion. Revised Army Regulations of 1862, p. 343, § 1327. The President's proclamations of 1863 and 1865 did not affect this law. J. M. Broodhead, 2d comptroller of the treasury, under date of July 13, 1869, in answer to questions by the attorney general, made the decision that desertion " *ipso facto* forfeits all. pay," etc., " and vests the money in the United States, and even a pardon cannot give him what has by his own act been placed in the treasury." This is but a statement of a rule that has always been observed in respect to deserters.

At all events the pardon can not affect this case. Barnes had never been voted a bounty by Rutland, but the town in effect voted *not* to pay him; and to allow him a bounty would be to allow the pardon to create one for him where none had been voted. The pardoning power is a restoring, not a creative power. Barnes being a deserter when said vote was passed, became vested with no

right against Rutland. He therefore had no forfeiture, so far as Rutland was concerned, to be pardoned or restored.

*W. W. Grout* and *L. H. Bisbee,* for the plaintiff.

The town of Rutland, by the proviso in said vote, did not intend to deprive the soldier of the bounty, even though he should be absent from a few roll-calls, if he ultimately returned to duty, for whatever reason, and was honorably discharged. The town intended, by that proviso, to cut off only such as, without intention of returning, had, or did thereafter, wholly abandon their military duty. That is not the case with this plaintiff, at least the exceptions do not show it. He was only absent from his company and regiment for a time, and then returned to duty; was pardoned of all offense, and restored to full civil and military privileges, and was *honorably* discharged. If he was a deserter, he would not have been honorably discharged.

The case fails to show that the plaintiff "deserted" the service. It only shows that he was absent without leave, whether one minute or one year is all the same in principle, and was reported on rolls a deserter; but that did not make him such. The report on rolls was by no means conclusive. It may have been through mistake or misrepresentation, or through malice of company commander. It was susceptible of explanation, and was at least fully explained by the fact that he afterwards returned to duty. The proviso in the vote is in the nature of a forfeiture, to which the law is not friendly, and before it is enforced the court will demand that the defendant town bring the case within the condition, not only in letter but in spirit.

The opinion of the court was delivered by

Wilson, J. The plaintiff, on the 5th day of January, 1864, re-enlisted as a veteran soldier in the military service of the United States, for the term of three years, to the credit of the defendants, and counted upon the quota of that town. He served until the 18th day of May, 1864, when he deserted said service. He was entered and returned upon the rolls of his company and regi-

ment as a deserter on and from said 18th of May until the 28th of March, 1865, when he returned to said service under the proclamation of the President of the United States, issued the 11th of said month. The town of Rutland, on the 7th of March, 1865, regularly voted to pay a bounty of $500 to re-enlisted veterans, by virtue of which the plaintiff claims to recover. But this vote contains the following proviso : " Provided that no part of such sum of $500 shall be paid to any soldier who has deserted, or may desert, or to his representatives." It is said by the plaintiff's counsel that Barnes did not desert the service ; that he was absent without leave, and was reported a deserter. But the agreed case shows not only that the plaintiff was reported a deserter, but also that he actually deserted the service nearly a year before the vote to pay a bounty was passed by the town, and that he was a deserter at that time. The plaintiff insists that the defendant town, by the proviso in said vote, did not intend to deprive the soldier of the bounty, even though he was absent from a few roll-calls, if he ultimately returned to duty, for whatever reason, and was honorably discharged. But the language of the vote is too plain to admit of any doubt as to the intention of the town. The plaintiff had not, either at the time he deserted, or at the time the vote was passed, any right of action, or even claim against the defendants for military service performed by him, and being a deserter, he could not have expected the town would vote to give him what he was not legally or morally entitled to receive or claim. Nor can any one reasonably suppose the town intended to make a promise to the plaintiff, knowing that he could not enforce it by suit. The act of 1864 provides " That no action shall be sustained by a soldier for such bounty or pay when said soldier has deserted the service." The defendant town did not know, at the time the vote was passed, that Barnes was a deserter, but knew that soldiers had deserted the service, and that others might commit the same offense. Hence, the town, as an additional protection, in case of desertion, excepted from the vote those who had deserted, and those who should desert the service. The plaintiff comes within the exceptional clause, and no bounty was voted to him by the town. The vote constitutes a promise by the town

to pay the sum of $500 to each and every veteran soldier who had re-enlisted for and been credited to the town of Rutland, and had not been paid any town bounty, and had not deserted, and should not desert the service. We think this construction is warranted by the language of the vote, and that it gives the promise all the effect it was intended to have. The fact that the plaintiff returned to the service, and was pardoned, does not affect the construction of the vote, nor give him the right to a town bounty where none had been voted to him.

The *pro forma* judgment of the county court is reversed, and judgment for the defendants to recover their costs.